IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHAD E. OSTERHOUT,

    Plaintiff,

v.

JASON TIMMS, et al.,

    Defendants.

Case No. 17-CIV-099-RAW

**ORDER**

    Before the court is the motion of the defendants for summary judgment. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *J.V. v. Albuquerque Public Schs.,* 813 F.3d 1289, 1296 (10th Cir.2016). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wright v. Experian Info. Sols.*, *Inc.,* 805 F.3d 1232, 1239 (10th Cir.2015).

    The parties diverge on the facts of the case. Therefore, the court will first set out the different "versions." In the complaint (#2), slightly modified by the present briefing, plaintiff alleges that on or about June 27, 2015, he was riding a motorcycle in LeFlore County, Oklahoma. Undersheriff Kendall Morgan ("Morgan") and Deputy Jason Timms ("Timms"), both of the LeFlore County Sheriff's Office, began to follow plaintiff in their vehicle. Twice plaintiff pulled over to the side of

1

the road, but both times Timms and Morgan pulled their vehicle behind him, but did not get out of their vehicle. Ultimately, plaintiff came to a stop and the Sheriff's vehicle (driven by Timms) hit the back tire of the motorcycle, pushing plaintiff and the motorcycle off the road and into a ditch, causing damage to the motorcycle and personal injury to the plaintiff. Plaintiff stood with his hands up, whereupon plaintiff was assaulted by Morgan with either fists or a flashlight. Plaintiff was placed in handcuffs and Morgan kicked or kneed plaintiff in the ribs.[1]

Defendants contend that they observed plaintiff leaving a "known drug house" at an excessive rate of speed and that he was eluding the officers who had both lights and sirens activated. Plaintiff then began throwing items away while riding his motorcycle at a high rate of speed. He then ran a stop sign and crossed four lanes of traffic before his tire went flat and he attempted to elude the officers on foot. He ignored verbal commands to stop and to show his hands. Plaintiff then turned on Morgan in an aggressive manner and Morgan struck Plaintiff in the face with an empty fist, not a flashlight as plaintiff asserts. Plaintiff resisted the application of handcuffs and Morgan applied two "knee strikes," which gained compliance. Timms (who has driving) did not "ram" the motorcycle with his vehicle and applied no physical force to plaintiff at all.

Plaintiff brings a federal claim pursuant to 42 U.S.C. §1983 for excessive force, and state law

---

[1] Of course, a party opposing summary judgment may not rest on the mere allegations of his pleading. The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995). The complaint's allegations are merely cited as a framework for plaintiff's version of the chronology. Moreover, as will be seen, the allegations of the complaint in some regards (such as both Morgan and Timms striking plaintiff) have not survived the discovery process. Although citing Rule 56.1(c) of the Local Civil Rules, plaintiff did not strictly comply with it in his response (#63), making analysis of the present motion more difficult.

claims of assault and battery, and negligent use of excessive force.² As to the federal excessive force claim, Timms and Morgan have raised the defense of qualified immunity.³ The applicable law in regard to allegations of excessive force and the assertion of qualified immunity was recently rehearsed by the Tenth Circuit in *McCoy v. Meyers,* 2018 WL 1721522 (10th Cir. April 10, 2018).

Briefly stated, the court must engage in a two-pronged inquiry. First, whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. Second, whether the right in question was clearly established at the time of the violation. *Id.* at *6. Courts have discretion to decide the order in which to engage the two qualified immunity prongs. *Id.* at *7. Under either prong, however, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Id.*

Regarding the first prong, the court must undertake a balancing test to determine whether the use of force to effect a seizure is unreasonable. Relevant factors include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Here, after evidently being chased for speeding away from a "drug house," plaintiff was charged with DUI, eluding an officer and resisting arrest. He was released on his own recognizance. The first factor weighs in favor of the plaintiff. As will be discussed, the second factor cuts both

---

²Section 1983 does not create substantive rights but provides a vehicle for their enforcement. *See Brown v. Buhman,* 822 F.3d 1151 n.9 (10th Cir.2016).

³"A qualified immunity defense is only available to parties sued in their individual capacity." *Beedle v. Wilson,* 422 F.3d 1059, 1069 (10th Cir.2005). Although plaintiff does not make this clear in his complaint, and the parties do not make it clear in their briefing or their proposed pretrial order, it appears plaintiff's §1983 claim is only asserted against Timms and Morgan in their individual capacities. There is no *respondeat superior* liability under §1983, *Brown v. Montoya,* 662 F.3d 1152, 1164 (10th Cir.2011), and plaintiff has put forth no other theory of liability of the County.

ways. The chase itself arguably posed a threat to the officers and others. As to whether plaintiff possessed a weapon or was reasonably perceived to pose a threat, the facts are much in dispute. The third factor is also somewhat in equipoise, as plaintiff contends (contrary to defendants) that he did not actively resist arrest or seek to evade arrest by flight.

Regarding the second prong, it is clearly established that specific conduct violates a constitutional right when Tenth Circuit or Supreme Court precedent would make it clear to every reasonable officer that such conduct is prohibited. *Id.* at *13. There may, however, be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Id.*

Plaintiff contends there are three applications of force in this case which were violative of plaintiff's Fourth Amendment rights: (1) Timms using the police cruiser to ram or bump plaintiff off his motorcycle and into a ditch, when the motorcycle was stopped or barely moving; (2) Morgan striking plaintiff in the face with a closed fist and/or flashlight when plaintiff's hands were up and he was not fleeing or resisting; and (3) Morgan kicking or kneeing plaintiff in the ribs when plaintiff was on the ground, subdued and handcuffed.[4] The court addresses these applications in turn.

Plaintiff drops suggestions along the way that he considers the pursuit improper *ab initio* for lack of reasonable suspicion, but does not raise a claim in this regard. The court must next determine when or if a "seizure" took place. This is necessary because "[t]o prevail on a claim for excessive force under the Fourth Amendment, a plaintiff must show he or she was 'seized' by a government actor." *Arnold v. Curtis,* 359 Fed.Appx. 43, 47 (10th Cir.2009). A police pursuit in attempting to seize a person does not amount to a "seizure" within the meaning of the Fourth Amendment.

---

[4]The summary in this regard is taken from page 2 of the parties' proposed pretrial order.

*California v. Hodari D.,* 499 U.S. 621, 626 (1991). Where a police officer chases a suspect who has failed to yield to the officer's show of authority (e.g., flashing lights and continuing pursuit), no seizure has occurred until the officer physically stops the defendant or the defendant yields to the officer. *See id.* at 629; *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 844 (1998). As stated, plaintiff alleges excessive force took place when the police car "ram[med] or "bump[ed]" his motorcycle while it "was stopped or barely moving." Either way, it appears the chase had stopped at that point, either through submission or physical force. At that point, a seizure had taken place.[5]

The most pertinent authority (not cited by the parties) appears to be *Scott v. Harris,* 550 U.S. 372 (2007), which held that an officer did not violate the Fourth Amendment by ramming the car of a fugitive whose reckless driving "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists and to the officers involved in the chase." *Id.* at 384. Ultimately, the Court held: "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id.* at 386.[6] Plaintiff cites *Walker v. Davis,* 649 F.3d 502 (6th Cir.2011), in which plaintiff's "reconstruction expert" testified that the officer had intentionally rammed plaintiff's motorcycle while the chase was ongoing. The Sixth Circuit distinguished the *Scott* precedent on the basis that the motorcyclist "posed no immediate threat to anyone as he rode his motorcycle across an empty field in the middle of the night in rural Kentucky." *Id.* at 503. That is not the situation in the case

---

[5]In the absence of a seizure, a claim may exist under the Fourteenth Amendment and substantive due process. *See Latta v. Keryte,* 118 F.3d 693, 701-02 (10th Cir.1997).

[6]*See also Plumhoff v. Rickard,* 134 S.Ct. 2012, 2021 (2014).

at bar.

This court, accordingly, finds *Scott* dispositive. It is undisputed that plaintiff ran a stop sign and crossed all lanes of a highway during the pursuit.[7] Therefore, the chase posed a danger both to other drivers and the officers themselves. Plaintiff contends that "Timms' intent is an issue of fact for the jury" (#63 at page 11 of 30 in CM/ECF pagination), but *Scott* protects the conduct even if it was intentional. Moreover, whether intentional or accidental, the force of the collision (as evidenced by the dent in plaintiff's motorcycle) was far less than in *Scott*.[8] Finally, even if *Walker* were arguably applicable, it is a decision of the Sixth Circuit. There is no Tenth Circuit authority clearly establishing that delivering a "bump" to a suspect's vehicle as a chase concludes is violative of a constitutional right. Even viewing the record in the light most favorable to plaintiff, summary judgment is appropriate as to this portion of the §1983 claim, as to both prongs of the qualified immunity test. In this regard, this is the only claim directly alleging conduct of Timms. Therefore, Timms is dismissed as a defendant. Liability may arise if an officer failed to intervene to prevent the allegedly excessive force. *McCoy*, at n.13. Plaintiff has not alleged Timms' liability on this basis and the court finds it inapplicable under the record.

The court next turns to Morgan's striking of plaintiff. Morgan testified that plaintiff began running and Morgan commanded him to stop, but plaintiff continued. As Morgan closed the distance between them, plaintiff turned on Morgan in an aggressive manner with clenched fists.

---

[7]Plaintiff contends he did not realize he was being pursued by law enforcement until the final minutes of the chase. The court takes this into account as a factual contention. The court cannot evaluate credibility on a motion for summary judgment. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir.1994).

[8]Plaintiff has also not demonstrated actual injury resulting from the cruiser striking his motorcycle. *See n.10.*

Morgan could not see if plaintiff had a weapon and plaintiff would not comply with Morgan's directive to show Morgan his hands. Morgan then struck plaintiff once in the face with his fist, knocking plaintiff to the ground. Under Morgan's version, the court would find Morgan entitled to qualified immunity, as his blow was in self-defense of a perceived imminent threat.

Plaintiff's version, however, differs. He states that Morgan struck him after plaintiff had stopped and had raised his hands. His version is bolstered, moreover, by the declaration of Gene White. White states that he spoke to Morgan after the incident and "[Morgan] then stated that he told [plaintiff] to put his hands up and that [plaintiff] complied. [Morgan] then admitted that he physically hit and beat [plaintiff] after [plaintiff] had put his hands up." (#63-7 at ¶7). Under plaintiff's version of events, Tenth Circuit authority appears to deny qualified immunity as to such conduct. *Chidester v. Utah Cty.,* 268 Fed.Appx. 718, 729 (10th Cir.2008)("It is . . . clearly established that a law enforcement officer may not use force on a compliant suspect already under the officer's control and not resisting detention or trying to flee."). *See also Perea,* 817 F.3d 1198, 1204 (10th Cir.2016) (in 2011, it was "clearly established law in the Tenth Circuit that the use of disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force"). The issue remains quite close in the court's view. Seconds earlier, plaintiff <u>had</u> been trying to flee. Also, does the mere raising of hands indicate a "compliant suspect"? Resisting detention (especially when not handcuffed) may resume at any moment. Does "under officer control" require the application of handcuffs?[9] Still, viewing the record in the light most favorable to plaintiff, the court will deny summary judgment as to this

---

[9] Courts must not define "clearly established law" at a high level of generality. *Knopf v. Williams,* 884 F.3d 939, 944 (10th Cir.2018). Unless describing a precise set of facts, however, some generality of language is unavoidable.

aspect of the §1983 claim.[10]

Finally, the court addresses the claim that plaintiff was the subject of physical assault either before or after he was handcuffed. Again, the parties do not agree on the facts. Plaintiff contends that <u>after</u> he had been handcuffed, Morgan stood up and kicked or kneed plaintiff in the ribs. Morgan asserts that plaintiff resisted the application of handcuffs, including attempting to stand up, and ignored Timms' directive to stop resisting. Therefore, Morgan delivered two "knee strikes" to plaintiff in order to gain compliance. After the knee strikes, plaintiff threw up his hands and the officers were able to secure the cuffs and place plaintiff in custody. Again, under Morgan's version of events, the court would grant summary judgment. Again, however, plaintiff's version is to the contrary and is bolstered by the declaration of Gene White, who states that "[Morgan] also told me that <u>after</u> he handcuffed [plaintiff], he kneed [plaintiff] in the ribs." (#63-7 at ¶7)(emphasis added).

This court focuses upon whether the conduct was pre-handcuffs or post-handcuffs because a similar focus is evident in the recent Tenth Circuit decision in *McCoy*. The court concluded that "the post-restraint force violated [plaintiff's] clearly established right to be free from the continued use of force after he was effectively subdued." 2018 WL 1721522 at *11.[11] Once more, viewing the record in the light most favorable to plaintiff, the court finds summary judgment is not appropriate

---

[10] It appears the blow resulted in a broken nose (#63-10 at page 3 of 3) and a laceration (#63-9) for plaintiff. The court does not view these as insignificant injuries, but notes that "even insignificant injuries may support an excessive force claim, as long as they result from unreasonably excessive force." *Sam v. Richard,* 2018 WL 1751566, *2 (5th Cir. April 12, 2018); *Scott v. City of Albuquerque,* 711 Fed.Appx. 871, 880 (10th Cir.2017)(a claim of excessive force requires some actual injury that is not de minimis).

[11] The facts of *McCoy* are quite different than the present case, in that plaintiff had earlier held a gun and conducted a hostage situation.

as to this aspect of the §1983 claim.[12]

This court is aware that some recent decisions of the United States Supreme Court have found qualified immunity applicable in diverse situations. In *Mullenix v. Luna,* 136 S.Ct. 305 (2015), the Court held that the officers' use of deadly force in attempting to stop the suspect's high-speed car chase (with a suspect who was a felon and who twice during the flight threatened to shoot police officers) did not violate clearly established law. That decision is distinguishable, both in the crime which plaintiff allegedly committed and the threat he posed. Quite recently, in *Kisela v. Hughes,* 138 S.Ct. 1148 (2018), the Court again reversed denial of qualified immunity in an excessive force case. In that case, an officer shot a woman who "was holding a large kitchen knife, had taken steps toward another woman standing nearby, and had refused to drop the knife after at least two commands to do so." *Id.* at 1150. Under plaintiff's verison of events, by contrast, no weapon or possibly-perceived weapon were involved in the case at bar. In *McCoy,* the Tenth Circuit distinguished *Kisela* (as regards post-restraint force) because *Kisela* "did not concern the use of force on a subdued individual." 2018 WL 1721522 n.23. The court is persuaded its ruling complies with

---

[12] The court pauses over one feature of the *McCoy* decision. The court states at one point (as already quoted) that the right to be free from the continued use of force after being effectively subdued was clearly established as of March 22, 2011 (the date of the litigated event). Later in the opinion, however, the court states in the alternative: "Even assuming that our previous cases were not sufficiently particularized to satisfy the ordinary clearly established law standard, ours is 'the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Id. at *13.* (Quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018)). If previous Tenth Circuit cases render the conduct clearly established as of April 13, 2015 (the date involved here) then no qualified immunity is available for the post-handcuffs assault. If *McCoy* (opinion issued April 10, 2018) is a "rare obvious case," then may the case at bar also be considered a "rare obvious case" or was the law not clearly established until *McCoy* was decided? In view of the fact that the Tenth Circuit stated its conclusion in the alternative, this court denies qualified immunity without answering the latter question.

current Supreme Court and Tenth Circuit precedent.[13]

Plaintiff's second claim is a state-law claim against defendant Board of County Commissioners of LeFlore County ("the Board") for assault and battery. The claim is brought pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"). Unlike §1983, the doctrine of *respondeat superior* is applicable under the OGTCA. *Pointer v. City of Tulsa,* 2014 WL 4244290, *7 (N.D.Okla.2014)(citing *Tuffy's, Inc. v. City of Oklahoma City,* 212 P.3d 1158, 1163 (Okla.2009)). Under the OGTCA, political subdivisions are liable for acts or omissions of employees who act within the scope of employment. 51 O.S. §153(A).

"Whether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged." *Tully's*, 212 P.3d at 1167. One acts within the scope of employment "if engaged in work assigned, or in doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Nail v. City of Henryetta,* 911 P.2d 914, 917 (Okla.1996). *See also* 51 O.S. §152(12)(defining scope of employment); *Rodebush v. Okla. Nursing Homes, Ltd.,* 867 P.2d 1241, 1245 (Okla.1993)(As a general rule, assault is not within the scope of an employee's employment; however, this general rule gives way if the act is "fairly and naturally incident to the business" and is done "while the servant was engaged upon the master's business . . . with a view to further the master's interest," although mistakenly or ill-advisedly).

Defendants do not seek dismissal under the pending motion as regards scope of employment. First, they argue that plaintiff failed to comply with the requirement of 51 O.S. §156(E) that the

---

[13] The *Kisela* decision itself states that "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case.'" 138 S.Ct. at 1153 (quoting *Mullenix,* 136 S.Ct. at 309.)

written notice of claim under the OGTCA include the "name, address and telephone number of the claimant." Here, the notice (#55-8) listed plaintiff's name and as a mailing address listed "c/o" his attorney's mailing address. The attorney's telephone number is also on the letter. Defendants cite *Griffey v. Kibois Area Transit Systems,* 328 P.3d 687, 689 (Okla. Civ. App. 2013), in which the court stated that what appears to be a similar letter "may not have complied with §156(E). However, the letter included a copy of the police report of the accident," which contained the claimant's address and phone number, thereby passing muster. (Emphasis added). This is dicta (and in hypothetical form) by the Court of Civil Appeals, and this court finds the notice sufficient. The OCTCA does not require strict compliance with its notice provision. *Aery v. Nuckolls,* 2016 WL 5795322, *3 (N.D.Okla.2016). Substantial compliance is sufficient as long as enough information is provided to fulfill the purpose of the provision. *Id.* Futhermore, the OGTCA should not be construed to "defeat the ends of justice." *Id.*

Defendants' second argument correctly notes that the Oklahoma Supreme Court has adopted an "objective reasonableness standard applicable to police use of force" that uses the "totality-of-the-circumstances" approach "like that employed by the United States Supreme Court in §1983 civil rights claims." *See Morales v. City of Oklahoma City,* 230 P.3d 869, 880 & nn.47-48 (Okla.2010).[14] Of course, this court has already applied the applicable standard to plaintiff's §1983 claim and found that the claims as to Morgan (i.e., the blow to plaintiff's face and the knee strike(s) to plaintiff) survive summary judgment. If anything, the standard under Oklahoma law is somewhat more favorable to a plaintiff. The Oklahoma Supreme Court has stated that a claim based on a law

---

[14]*Morales* mentions specific factors (additional to the ones in *Graham*) to consider as part of the totality of the circumstances. *Id.* at 880. This court finds such consideration does not lead to a different result in this case.

enforcement officer's alleged use of excessive force is "measured by a standard that has no fixed dimensions but shifts with the circumstances" and presents a "classic case for jury resolution." *Id.* at 881.[15] The court affirms its rulings made as to the §1983 claims in regard to plaintiff's state law claims.[16]

Plaintiff's third claim is also against the Board pursuant to the OGTCA and alleges negligent use of excessive force. Defendants argue that this claim is essentially the same as his other state-law claim. The court has discretion to dismiss duplicative claims under certain circumstances, but declines to do so under the present record. The matter may be revisited after plaintiff's presentation of its case in chief at trial.

It is the order of the court that the motion of the defendants for summary judgment (#55) is hereby granted in part and denied in part. Jason Timms is dismissed as a defendant, leaving Kendall Morgan as the sole defendant as to plaintiff's federal claim. The second and third claim under state law remain as to defendant County.

Dated this 23rd day of April, 2018.

_Ronald A. White_
Ronald A. White
United States District Judge
Eastern District of Oklahoma

---

[15] Although the court in *Morales* uses the phrase "qualified immunity," it does so in the context of an officer under Oklahoma law being allowed to use reasonable force in making an arrest. *Id.* at 877-78. In other words, there is no focus upon the state of the law being "clearly established."

[16] In this court's view, the fact that the Oklahoma Supreme Court speaks of a "classic case for jury resolution" does not mean that no incident may ever be resolved as a matter of law. Other judges have done so. *See, e.g., Lynch v. Bd. of County Commissioners of Muskogee County,* 2018 WL 1414844, *9 (E.D.Okla.2018)("In consideration of all these factors, [defendants] actions were still objectively reasonable" under the *Morales* test). The court also reaffirms its decision (for purposes of the state-law claim) that the incident of plaintiff's motorcycle being struck by the law enforcement vehicle does not survive summary judgment.