IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHAD E. OSTERHOUT, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-17-99-RAW |
| ) | |
| JASON TIMMS; KENDALL MORGAN; ) | |
| BOARD OF COUNTY COMMISSIONERS ) | |
| OF LEFLORE COUNTY, OKLAHOMA, ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Before the court is the motion of defendant Morgan for remittitur. This matter came on for trial on October 1-4, 2019. The jury returned a verdict (#144) against both defendant Morgan and defendant Board of County Commissioners of LeFlore County. It assessed compensatory damages against both defendants in the amount of $3 million and punitive damages against Morgan in the amount of $1 million.

The movant bears a heavy burden in showing that remittitur is appropriate. *Blanke v. Alexander,* 152 F.3d 1224, 1236 (10th Cir.1998). To determine whether remittitur is appropriate, courts must evaluate whether the evidence supports the verdict. *Burke v. Regalado,* 935 F.3d 960, 1035 (10th Cir.2019). The jury has wide latitude to choose an award based on the evidence. *Id.* Remittitur is appropriate only when the jury award is so excessive as to shock the judicial conscience and to raise an irresistible inference that

passion, prejudice, corruption or another improper cause invaded the trial.[1]  *Id.*

The district court must review the trial record as a whole in the light most favorable to the verdict.  This perspective is essential to preserve the jury's role as the trier of fact.  *Adams v. City of Chicago,* 798 F.3d 539, 543 (7th Cir.2015).  The Tenth Circuit affords wide discretion to juries to fix the amount of non-economic compensatory damages.  *Racher v. Westlake Nursing Home Ltd. P'ship,* 871 F.3d 1152, 1172 (10th Cir.2017)[2].  Non-economic damages may be difficult to quantify.[3]  There is no scientific formula or measuring device which can be applied by a jury to place a precise dollar value on pain, suffering, and other items of intangible harm. See  *Nevor v. Moneypenny Holdings, LLC,* 842 F.3d 113, 121 (1st Cir.2016)[4].

---

[1]The Tenth Circuit has also stated that "mere excessiveness in the amount of an award may be cured by a remittitur, whereas excessiveness which results from jury passion and prejudice may not be so cured. In that case, a new trial is required".  *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1561 (10th Cir.1991).  *Burke* represents the latest iteration, but this court's reasoning actually tracks the standard articulated in *Mason.* As a treatise notes, remittitur is not proper to use "if the verdict was the result of passion and prejudice, since prejudice may have infected the decision of the jury on liability, as well as on damages."  11 Wright, Miller & Kane, *Federal Practice and Procedure,* §2815 at 218 (2012 ed.).  This court finds the jury's verdict as to liability was well-supported by the evidence and not "infected" by passion or prejudice. The award of compensatory damages (but not the award of punitive damages) was excessive, but the court does not find an irresistible inference of passion or prejudice.

[2]Movant seeks to distinguish *Racher* on the ground that it was a diversity case, not a §1983 action. (#168 at 2).  This statement in *Racher*, however, is quoted in *Burke,* which was a §1983 case.  935 F.3d at 1036.

[3]Nevertheless, a Plaintiff may be required under Rule 26 to assess the amount of damages sought. This only makes sense, as no one knows better how much a claim may be worth than the person seeking it.

[4]Much of the parties' discussion is obviated by the fact that (as regards compensatory damages) the Tenth Circuit discourages comparisons to awards from other cases as part of the remittitur analysis, because they yield no insight into the evidence the jurors heard and detract from the appropriate inquiry, which is whether the verdict is against the weight of the evidence.  *Burke,* 935 F.3d at 1036 n.60.

Movant correctly notes that, in closing argument, plaintiff's counsel requested an award of $2 million in compensatory damages.  (*See* #164 at page 78 of 98 in CM/ECF pagination)[5].  In *Denhof v. City of Grand Rapids,* 494 F.3d 534 (6th Cir.2007), the court reviewing a similar circumstance said "[p]resumably, the plaintiffs' attorneys requested the amount of damages they believed were supported by the evidence."   *Id.* at 547.  Subsequently, the Sixth Circuit has made clear that "the amount requested by the attorneys is only one factor to be considered in assessing whether a jury verdict should be remitted." *West v. Tyson Foods, Inc.,* 374 Fed.Appx.624, 642 (6th Cir.2010).

Here, plaintiff did not present testimony from a medical expert, but it was undisputed from the medical records that he suffered broken nasal bones and a fracturing of an orbital bone (#161 at page 70 of 179 in CM/ECF pagination; page 82 of 179), which required surgery.  (*Id.* at pages 82-83).  Plaintiff also testified regarding his continuing pain, both physical and mental.  (*Id.* at pages 93, 119 and 121).  He testified as to his requiring medication for depression and anxiety.  *Id.* at page 123).  Additionally, plaintiff's friend Ben Loggains testified as to his observations of plaintiff's depression.  (#162 at page 25 of 265). Plaintiff also testified as to his inability to work and lost opportunities.  (#161 at page 125). Under the governing standard of review, this court will grant remittitur, but only to the level of $2 million, the amount plaintiff's counsel requested in closing argument.

---

[5]Plaintiff responds that the higher verdict "merely underscores the strength of the evidence and the jury's independent decision-making."  (#159 at 7 n.5).

Movant also challenges the award of punitive damages. The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. *Burke,* 935 F.3d at 1037. The test for determining whether punitive damages are excessive is set forth in *BMW of North America Inc. v. Gore,* 517 U.S. 559 (1996). The court should consider (1) degree of reprehensibility of defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

In evaluating reprehensibility, courts consider (1) whether the harm caused was physical as opposed to economic; (2) whether the defendant acted with indifference or a reckless disregard for the health or safety of others; (3) the financial vulnerability of the plaintiff; (4) whether the defendant's wrongful conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Burke,* 935 F.3d at 1037. The degree of reprehensibility of a defendant's conduct is perhaps the most important indicium of the reasonableness of a punitive damages award. *Id.*

Movant essentially concedes that the first two sub-factors weigh in favor of the plaintiff (#168 at 7). The record seems neutral regarding the third sub-factor. (*See* #168 at 7-8 n.3). Movant argues, however, that the fourth and fifth sub-factors are in his favor and therefore the reprehensibility factor is "essentially, a wash." (*Id*). In this regard, movant

seeks a strong distinction between the second sub-factor and the fifth sub-factor. He revisits the argument regarding malice and scope of employment which appears regarding movant's motion for new trial. He notes plaintiff's argument in that regard that Morgan acted "recklessly" but not maliciously, and therefore concludes the fifth element favors defendant.

The court declines to adopt this interpretation under the facts of this case. The purported distinction between recklessness and malice *vis a vis* scope of employment is a matter of Oklahoma law. The *Gore* sub-factors are matters of federal law. The interpretation of one is not necessarily applicable to interpretation of the other. Obviously, a distinction between "reckless disregard" (second sub-factor) and "malice" (fifth sub-factor) might exist under certain facts. In the court's view, it is not a major distinction in a case of alleged excessive force, as in the case at bar. There is no question that Morgan's striking of plaintiff was intentional and not an accident. This is what the fifth sub-factor means by intentional malice. The court concludes the "reprehensibility" prong is satisfied[6].

The second *Gore* factor examines the disparity between compensatory and punitive damages. *Id.* at 1038. In practice few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process. *Id.* In *Gore,* the Supreme Court vacated a $2 million punitive damages award that was 500 times the amount of the plaintiff's actual

---

[6]The pertinent instruction advised the jury as follows: "You may assess punitive damages only if you find that the conduct of Defendant Morgan was malicious or in reckless disregard of Plaintiff's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights, if under the circumstances, it reflects complete indifference to Plaintiff's safety or rights." (#143 at 33).

harm as determined by the jury.  By contrast, in *Deters v. Equifax Credit Info. Servs.,* 202 F.3d 1262, 1272-73 (10th Cir.2000), the Tenth Circuit upheld a punitive damages award of $295,000 in a sexual harassment case where the jury awarded $5,000 in compensatory damages – a ratio of 59 to 1 – because where the injury is primarily personal, a greater ratio between punitive and compensatory damages may be appropriate.  *Id.*  Here, the amount of punitive damages awarded was <u>less</u> than the amount of compensatory damages awarded.  Neither amount is small, but also not (in the court's view) grossly excessive.  The court finds the second factor favors plaintiff as well.

Under the third *Gore* factor, in contrast to the compensatory damages remittitur analysis, the court must evaluate the disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases.  *Id.*  The fundamental question is whether the defendant had reasonable notice that his conduct could result in such a large punitive award.  *Id.*  Again, the salience of this factor is clear in certain types of cases.  It seems less clear in a case of excessive force.   How much "notice" is needed that Morgan's conduct (viewed in the light most favorable to the verdict) could result in a sizable award of punitive damages?  The court concludes "[t]he third factor is on the Defendant['s] side, but it is less important than the first and less probative than it otherwise could be." *Hill v. Kilbourne,* 157 F.Supp.3d 545, 557 (M.D.La.2015).  The court in *Hill* also addresses an argument similar to movant's herein, comparing criminal penalties, (#168 at 10), and finding

it "less probative because it is not a civil sanction." *Id.* The award of punitive damages will not be disturbed.

In an ordinary remittitur case, the plaintiff must be offered a choice between a new trial and accepting a remittitur to avoid a serious problem under the Seventh Amendment, which reserves to the jury the determination of damages. *O'Gilvie v. Int'l Playtex, Inc.,* 821 F.2d 1438, 1447-48 (10th Cir.1987). The next question is the scope of the new trial. Where a new trial on less than all the issues could not be had without confusion and uncertainty, a new trial should be had as to liability as well as damages. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 703 F.2d 1152, 1178 (10th Cir.1981).

The court is persuaded that a new trial may be had as to compensatory damages alone, leaving undisturbed the first jury's conclusions as to liability and punitive damages. The Seventh Circuit entered such an order in *Taliferro v. Augle,* 757 F.2d 157 (7th Cir.1985). It is true that the second jury would have to hear much of the evidence that the first jury heard to reach a conclusion on compensatory damages, but this in no way indicates "confusion and uncertainty" such that the first jury's verdict must be thrown out wholesale. Of course, the second jury would not be advised of the first jury's punitive damages award.

It appears that "[o]rdinarily, a plaintiff who accepts a reduced award may not appeal from the court's decision to cut back on the jury's verdict." *Adams v. City of Chicago,* 798 F.3d 539, 541 (7th Cir.2015). "If instead the plaintiff rejects the remittitur and chooses a new trial, then appeal is possible, but it must await the conclusion of the second trial." *Id.* The

court merely notes this of interest. Plaintiff is of course free to pursue whatever appeal he wishes in due course.

It is the order of the court that the motion of defendant Kendall Morgan for remittitur (#153) is hereby granted in part and denied in part. The jury's verdict of liability is undisturbed. By May 11, 2020, plaintiff may (by written notice) either accept the remitted amount of $2 million in compensatory damages (and the undisturbed amount of $1 million in punitive damages) or opt for a new trial solely as to compensatory damages. In all other respects, the motion is denied.

**ORDERED THIS 23rd DAY OF APRIL, 2020.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**